**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: FAMILY DOLLAR FLSA
LITIGATION.

———————————————

IRENE GRACE; SHARRON
DAUGHERTY; JOHN A. GERTKEN;
DUSTY G. HYLTON; LASANDRA B.
ROSE; PHILLIS FANCHER; JODI HARE;
ANGELA J. COOPER; MELVIN
CATHEY; MARK CLARK; JOHN E.
GERSCH; MARGIE A. LITTLE; VICKI
BROWN GUY; BRENDA KAY
RUSSELL, a/k/a BRENDA K.
RUSSELL-STAIN; BARBARA G.
BROWN; MARCELLA SAN GIORGIO;
BRIAN K. BACKLUND; JAMES            No. 09-2029
MANOS; ARLENE ATKINS; TRACY
KLOPPE; SANDRA CARNEY;
CATHERINE M. DAWSON; ALFRED
BLAIR; ETHEL BRASWELL; SHARON
CANTRELL; JUDY CARVER; ERICA L.
LEWIS; MICHAEL M. MCCOY;
BRENDA ENDLSEY ROMINES; EDDIE
MAE SMITH; KHIALLAH SOLOMON;
IVA VANETTA TATE; WILLIAM K.
TEDDER; NATASHA LEDYARD;
DONNA GAIL DAVIS; VERONICA
TAYLOR; NANNIE SUE DANIELS;
TANYA LAKITSHA WARREN, a/k/a
Tanya Warren-Thomas; SANDRA
DIANE RHINEHART;

Monica Jennifer Dance; Jennifer
K. Leonard; Betty J. Dearmon;
Jimmy Earl Gilbert; Susan
Brown; Mary Defoor; Todd
Hargrove; Jewel Ray Belford;
Gwen Sinns; Robby Quinton;
Tara Y. Jahateh; Tammie
Brunson; Brenda Louise Bilbrey;
Tammy Asher; Nancy Burnette;
Sharon Phillips Bell; Amanda
Echols; Clair W. Trost, Sr.;
Austin S. Mudenda; Nancy
Smith; John Morrison; Dorothy
L. Evans; Joanne K.
Mullins-Swain; Donna Sanchez,
            *Plaintiffs-Appellants,*

            v.

Family Dollar Stores,
Incorporated,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Senior District Judge.
(3:08-md-01932-GCM; 3:06-cv-00306-GCM)

Argued: December 10, 2010

Decided: March 22, 2011

Before NIEMEYER and KING, Circuit Judges,
and Patrick Michael DUFFY, Senior United States District
Judge for the District of South Carolina,
sitting by designation.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge King and Senior Judge Duffy joined.

---

**COUNSEL**

**ARGUED:** Robert L. Wiggins, Jr., WIGGINS, CHILDS, QUINN & PANTAZIS, PC, Birmingham, Alabama, for Appellants. Robert Allen Long, Jr., COVINGTON & BURLING, LLP, Washington, D.C., for Appellee. **ON BRIEF:** Gregory O. Wiggins, WIGGINS, CHILDS, QUINN & PANTAZIS, PC, Birmingham, Alabama; Robert E. DeRose, Katherine A. Stone, BARKAN NEFF HANDELMAN MEIZLISH, LLP, Columbus, Ohio; Gregory L. Jones, GREG JONES & ASSOCIATES, PA, Wilmington, North Carolina, for Appellants. Mark W. Mosier, COVINGTON & BURLING, LLP, Washington, D.C., for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

Irene Grace, a former store manager for Family Dollar Stores, Inc., who worked 50-65 hours per week and was paid a fixed salary plus bonus, commenced this action against Family Dollar under the Fair Labor Standards Act for overtime wages. While Family Dollar treated Grace as an executive exempt from overtime pay requirements under 29 U.S.C. § 213(a)(1), Grace argues that she was not subject to this exemption because she devoted the vast majority of her time to nonexecutive tasks and therefore should be paid wages on the basis of a 40-hour work week plus overtime, as required by 29 U.S.C. § 207(a)(1). She seeks relief on behalf of herself and other employees similarly situated.

Even though the record shows that as a store manager, Grace was required to perform the full range of tasks neces-

sary for the successful operation of a store, including nonexecutive tasks, she nonetheless remained the highest level Family Dollar employee at the store, and her income depended on the success of her performance and the profits of the store. After applying the statutory and regulatory factors under 29 U.S.C. § 213(a)(1) to determine whether Grace was exempt as an executive, we conclude that she was exempt and therefore not entitled to overtime pay. Accordingly, we affirm the judgment of the district court.

Because Grace's claim was properly dismissed on summary judgment, we do not decide whether the district court abused its discretion in declining to permit Grace to pursue her claim on behalf of other similarly situated employees.

I

Family Dollar Stores, Inc. is a national discount retail chain, operating over 6,000 stores in 44 States. It has divided its operations into 95 regions, each run by a vice president, and then into districts, each run by a district manager. A district, which can vary in size from a single city to an area within multiple States, includes 10 to 30 retail stores, each run by a salaried store manager. The store manager supervises one or more hourly assistant managers and multiple hourly employees, who work as clerks. Each store manager sets his or her own hours of employment and is authorized to make decisions that affect the profitability of the store. Each store, which can vary in size from 3,700 square feet to 12,300 square feet, is a profit center, and the store manager receives a bonus that is directly related to the profitability of the store.

Family Dollar's store managers open and close stores; train, supervise, discipline, and evaluate employees; order inventory; handle relations with customers, both to assure their satisfaction and also to monitor their conduct to prevent theft; operate the stores against a quarterly budget; handle the money received by the store, make deposits, and complete the

paperwork related to sales and receipts. The store managers also devote a large percentage of their time to nonexecutive tasks, such as unloading freight, stocking shelves, running cash registers, and cleaning up.

While store managers make numerous decisions that can affect the profitability of a store, they are also subject to company policies related to the appearance of the stores and their inventory, the layout of the stores, the stores' hours of operation, and the wages that employees are paid. To this end, the district managers supervise store managers and visit each store on a regular basis.

Over the years, Family Dollar has considered its store managers to be executives who are exempt from overtime pay requirements.

Irene Grace began working at Family Dollar in 1996 and shortly thereafter, because of her prior managerial experience, became a store manager. She remained at Family Dollar until October 2004, when she resigned to take a job less demanding of her time. While at Family Dollar, Grace worked from 50-65 hours per week, depending on the store's particular needs at any given time. Her salary was initially $400 a week and increased during the eight years she worked as a store manager to $655. She also received a bonus each year, depending on her performance and the performance of her store.

Grace reported to a district manager, who was responsible for 17 stores and who, she stated, visited her store once every two to three weeks. In operating her store, Grace regularly performed all the tasks necessary for the operation of her store. In addition, she supervised all operations. She handled disputes among employees; handled customer complaints; marked down inventory; established employee schedules; trained and disciplined employees; made personnel recommendations to the district manager, who followed those recommendations 95% of the time; and took care of deposits and

paperwork for the store. She explained that her job required that she "multi-task," such that while she performed nonmanagerial tasks, she was also functioning as a manager, which required that she watch out for possible theft by customers, train other employees, and perform other managerial tasks.

In May 2004, Grace commenced this action on behalf of herself and other employees similarly situated, filing her action in the Middle District of Georgia. Family Dollar moved to strike the collective-action allegations and also to transfer the case to the Western District of North Carolina, where Family Dollar was headquartered and where similar cases were pending. The district court in the Middle District of Georgia transferred Grace's action to the Western District of North Carolina where it became part of the "Family Dollar FLSA Multidistrict Litigation."

The district court, in a ruling dated September 6, 2007, denied Grace's motion for preliminary certification as a collective action to facilitate notice to potential plaintiffs. Nonetheless, 74 plaintiffs opted to join Grace's collective action, pursuant to 29 U.S.C. § 216(b). In denying a preliminary certification in Grace's case, the court concluded that any nonexecutive duties performed by store managers were not the result of Family Dollar policy but rather the decisions of individual store managers. It concluded, "This Court cannot assume that every store manager at Family Dollar spent a majority of their time doing non-managerial tasks. Such a declaration would require an individualized evaluation of each plaintiff." The court concluded that "[g]iven the variation in duties among managers in different stores, the pleadings do not meet the standard of commonality needed for this Court to find that Plaintiffs are similarly situated."

On Family Dollar's subsequent motion, the district court entered summary judgment in favor of Family Dollar based on Grace's deposition testimony, which the court summarized as follows:

> Grace testified in the deposition that she regularly interviewed and provided recommendations as to the hiring of employees, trained employees, assigned employees to a schedule and set their hours of work, and directed and supervised her employees' work. She also maintained sales records and was responsible for financial records, conducted performance reviews of her employees, handled employees' complaints and disputes between employees, disciplined employees, planned and apportioned work among her employees, was responsible for ordering merchandise, controlled the flow and distribution of merchandise, was responsible for the safety of her employees at the store, and was responsible for handling customer complaints and controlling theft. Defendant also alleges that she was free from supervision as her District Manager was only in her store 2-3 times per month. However, Grace also testified in her deposition, that her primary duty was freight and that she spent 95% of the time doing freight (doing it herself, not supervising other people doing it). Plaintiff also alleges that she spent 99% of the time during a week putting out freight, running a cash register, doing the schematics and doing the janitorial work.

(Internal citations omitted). The court concluded that Grace's job as store manager met the Department of Labor's requirements for establishing that she was an executive employee, even though she spent many hours on nonexecutive tasks. The court concluded that while Grace performed nonexecutive tasks, she was concurrently managing the store and that her primary duties were managerial. The court noted that Grace had relative freedom from supervision, that her salary was higher than nonexempt employees, and that she regularly exerted authority over other employees. For these reasons, the court entered an order, dated July 9, 2009, granting Family Dollar's motion for summary judgment.

In denying the motion of Grace and the other plaintiffs for reconsideration, the district court found no just reason to delay the entry of final judgment with respect to (1) its interlocutory rulings denying Grace the right to pursue her claim on behalf of other employees similarly situated (dated September 6, 2007) and (2) its order granting Family Dollar's motion for summary judgment (dated July 9, 2009). Accordingly, it entered final judgment under Rule 54(b) on August 12, 2009.

Both Grace and the other employees whom she sought to represent filed this appeal.

## II

We review orders granting summary judgment *de novo*, applying the same standard that the district court was required to apply. *See Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). Of course, summary judgment is appropriate only if the moving party shows that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may defeat a motion for summary judgment by demonstrating that a genuine issue of material fact exists by referencing matters in the record, including depositions and affidavits. Fed. R. Civ. P. 56(c). But it cannot create a dispute about a fact that is contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997)); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975-76

(4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). As we explained in *Barwick*,

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

736 F.2d at 960.

Thus, while Grace did rely on her affidavit numerous times in her brief to suggest that deposition facts were disputed, when Grace's deposition testimony and later affidavit are inconsistent, we will disregard her affidavit and rely on the testimony she gave in her deposition, where she was examined at length about her responsibilities as a manager of a Family Dollar store.

## III

The Fair Labor Standards Act requires that an employee receive overtime pay if she works more than 40 hours in any workweek. 29 U.S.C. § 207(a). The statute, however, exempts from this requirement "any employee employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). The Department of Labor has, for the relevant period, promulgated two sets of regulations interpreting the scope of the executive exemption, one of which applied before August 2004, and the other, after August 2004. Because Grace's claim covers the period from 1996 to October 2004, it is governed, in differing degrees, by both pre-2004 and post-2004 regulations. But the application of the different regulations is not material to the outcome of this case.

Under the pre-2004 regulations, an employee who earns more than $250 per week qualifies as an executive if (1) her

primary duty consists of the management of the enterprise and (2) includes the customary and regular direction of two or more other employees. 29 C.F.R. § 541.119(a) (pre-2004). The post-2004 regulations provide that an employee is an executive if: (1) she is compensated at a rate of at least $455; (2) her primary duty is management; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or her suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a) (2004). Thus, the 2004 regulations include the pre-2004 factors and add factor (4).

Factors (1), (3), and (4) are not substantially disputed in this case. As to factor (1), during the period when the regulation required that Grace earn $250 per week, she earned at least $400 per week, and when the regulation required that she earn $455 per week, she earned over $600 per week.

As to factor (3), Grace did in fact customarily and regularly direct the work of two or more other employees. An employee directs the work of two or more employees if her subordinates work 80 hours or more per week, and she directs the work of those employees "customarily and regularly" if the "frequency [is] greater than occasional but . . . may be less than constant." 29 C.F.R. § 541.701 (2004). Grace testified that the number of employees at her store ranged from three to five and that she always had at least two cashiers. An employee for Family Dollar testified that Grace's subordinates worked 80 or more hours per week during 89.23% of the weeks that she was a store manager. And Grace testified that she directed the work of these employees, stating that one of her "primary tasks and functions as a successful store manager" was to "train [employees] and manage them." When employees did not perform a required task, they would have to answer to Grace, who also engaged the employees in counseling and coaching to ensure that they performed their tasks as necessary.

Explaining why she had low turnover in her store, Grace testified, "I tried to teach the people what I knew to make the store run smoothly. I always took pride in the store, and I wanted them to take pride in the store."

And as to factor (4), Grace testified that her district manager followed her employee recommendations and evaluations at least 95% of the time, and thus her suggestions regarding the hiring of employees were given significant weight. She also testified that she could fire employees and did so on at least one occasion. As she explained, she had a "stock guy that was constantly late to work, didn't show up. So one day I just met him at the door and told him we didn't need him any more after he had just not come to work."

Grace rests her case primarily on disputing factor (2), which requires that her primary duty be management. *See* 29 C.F.R. § 541.119(a) (pre-2004); 29 C.F.R. § 541.100(a) (2004).

Grace contends that because 99% of her time was devoted to nonexecutive duties, at least a genuine issue of material fact exists about whether she was an executive, precluding the entry of summary judgment against her. She asserts that most of her time involved "putting out freight, running a cash register, doing the schematics and doing janitorial work." She argues that the district court erred in not giving her an inference that "spending 99% of her time on non-managerial duties precluded her managing the store." She claims that "there comes a point when the degree of manual labor approaches 80-90% of the plaintiff's time that a genuine issue of material fact as to her 'primary duty' is created by that fact alone." In response to the district court's conclusion that she performed managerial tasks and nonmanagerial tasks concurrently, she argues that "she performed few concurrent managerial duties because she had none to begin with."

Family Dollar contends that Grace's argument essentially ignores the fact that she performed exempt and nonexempt

work concurrently. While Family Dollar acknowledges that Grace devoted extensive time to nonexecutive tasks, the federal regulations governing whether Grace's primary duty was management direct that the court look at all relevant factors. In this case Family Dollar argues that Grace "exercised discretion and judgment on a daily basis," relating to every aspect of management in the store. It pointed out that Grace had to adopt employee schedules to fit the needs of her store, including the staffing of different shifts. Ultimately, Grace considered her most important task to be "serving customers and trying to make the store profitable," quintessentially a management task. Family Dollar notes that Grace accomplished her goals by creating loyal, repeat customers; training employees; and focusing on inventory and payroll.

To determine whether an employee's primary duty is management, we look to the character of the employee's job as a whole, focusing on five factors outlined by the pre-2004 regulations: (1) the amount of time spent performing managerial duties; (2) the relative importance of these managerial duties; (3) the frequency with which the employee exercised these duties; (4) the relative freedom from supervision; and (5) the relationship between the employee's salary and nonexempt employees. 29 C.F.R. § 541.103 (pre-2004).

First, with respect to the amount of time spent performing managerial duties, Grace claims that because she spent such a large portion of her time doing nonmanagerial work, this factor cannot be satisfied. But the regulation explains that time alone "is not the sole test, and in situations where the employee does not spend over 50 per cent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion." 29 C.F.R. § 541.103 (pre-2004). More particularly, the Fair Labor Standards Act, recognizing the nature of retail business, exempts retail executives from the requirement that the majority of their hours be spent on executive functions. 29 U.S.C. § 213(a)(1) ("[A]n employee of a retail or service

establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities"). There is no per se rule that once the amount of time spent on manual labor approaches a certain percentage, satisfaction of this factor is precluded as a matter of law. *See Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 504 (4th Cir. 2007) ("[T]he time factor . . . might even be somewhat misleading where the employee's management and non-management functions are [not] . . . clearly severable") (internal quotation marks omitted) (second bracket and ellipses in original) (quoting *Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982)); *see also Haines v. Southern Retailers, Inc.*, 939 F. Supp. 441, 449 (E.D. Va. 1996) ("[A] number of federal courts have 'disregarded the time factor . . . where the manager is in charge of a separate facility such as a convenience store or restaurant chain'") (quoting *Meyer v. Worsley Co., Inc.*, 881 F. Supp. 1014, 1020 (E.D.N.C. 1994)).

In this case, Grace was in charge of a separate retail store, seeking to make it profitable. While she catalogs the nonmanagerial jobs that she had to do, claiming that they occupied most of her time, she does so without recognizing that during 100% of the time, even while doing those jobs, she was also the person responsible for running the store. Indeed, there was no one else to do so, and it cannot be rationally assumed, nor does the record support a claim, that the store went without management 99% of the time. Grace also fails to acknowledge the importance of performing nonmanagerial tasks in a manner that could make the store profitable, the goal of her managerial responsibility.

We accept Grace's deposition testimony to determine the nature of her work for Family Dollar. She testified that she had the responsibility for making a profit and that she made a profit by "controlling inventory, controlling payroll, control-

ling the things that you ordered, like your store supplies and —because all of that came off—off of the top"; "controlling, you know, anything in the store, damages, make sure there was no accidents—accident loss or—safety." Grace recognized that her exercise of judgment and decisions on a day-to-day basis affected customer loyalty and satisfaction, as well as profits. She concluded, "I always took pride in the store, and I wanted them [the employees] to take pride in the store. . . . I treated people the way I wanted to be treated, with respect. . . . I think a manager is a team leader, and if they're not leading that team, you're not going to have—you know, if the people come to work and they're not proud in your store and they're not proud in themselves or in their job, they're not going to do a good job." She explained that if they were not doing a good job and the store did not look good, the store would not have good profits.

Thus, while Grace performed nonmanagerial tasks around the store as she determined necessary, she *concurrently* performed the managerial duties of running the store. As she explained, "whether or not [she] happened to be putting up stock at a given moment or running a register or talking to a customer, at the same time [she was] responsible for making sure the whole store ran successfully." Similarly, she stated, "When [she was] running a cash register, [she was] at the same time looking at the condition of the front end and keep an eye out for theft, etc." She explained, "When [she was] doing [her] paperwork for [her] cash registers and [her] money, [she was] thinking about what had to be done later with regard to that money and all that paperwork for that and store deliveries." This multi-tasking—doing management jobs while doing nonexempt work—is explicitly recognized as a managerial duty by the Department of Labor's regulations, which describe the situation where a retail manager performs concurrent nonmanagement duties:

> For example, an assistant manager in a retail estab-
> lishment may perform work such as serving custom-

ers, cooking food, stocking shelves and cleaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management. An assistant manager can supervise employees and serve customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves.

29 C.F.R. § 541.106 (2004).

Grace apparently had a good handle on what was necessary to run her store and make it a success, and she expressed pride in believing that she did it better than other store managers in the Family Dollar chain. She spoke of having a good and well-presented inventory, an attractive and clean store, a well-trained staff, and a respectful attitude towards customers. Since profit margins were small, she pointed out that good management of such a retail operation also required her special attention in dealing with shrinkage, waste, and breakage of inventory, as well as customer complaints. Finally, she acknowledged that she exercised judgment in scheduling a small staff to cover multiple shifts.

Regardless of the template and budget that were given to her by Family Dollar for the operation of her store as part of a chain, the successful management of her store within those parameters depended totally on her own decisionmaking and judgment, even as she was also required to do nonmanagerial work a majority of the time. Thus, while Grace unloaded freight or swept the floors, she was also the manager, and no one else was directly supervising her work.

In short, whether Grace was simply standing around or stocking shelves, she remained responsible for addressing any problem that could arise and did arise during the course of the daily retail operations. As she testified at length, she alone had the responsibility for addressing complaints by employ-

ees, complaints by customers, damaged goods, nonreporting employees, customer theft, adequate staffing of cash registers —and the list continued extensively. In this context, it is misleading simply to add up the time that she spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager. To be sure, each of these tasks was nonmanagerial, but she performed these tasks in the context of her overall responsibility to see that the store operated successfully and profitably, and they were important to fulfilling her goals and responsibilities. At bottom, Grace had the ultimate responsibility for operating the store profitably, and she did so successfully. As she testified plainly, "I ran the store when I was in the building," and, according to her, she was in the building most of the time, as she spent between 50 and 65 hours per week at the store.

We conclude that Grace was performing management duties whenever she was in the store, even though she also devoted most of her time to doing the mundane physical activities necessary for its successful operation.

With respect to the second, third, and fourth factors for determining whether management was Grace's primary duty, the facts discussed with respect to the first factor satisfy these factors also. When focusing particularly on the relative importance of managerial duties as compared to other types of duties, all of Grace's performance was aimed at running the store in a manner that met her criteria for a well-run store. Whether she was collecting cash, filling out paperwork, sweeping the floor, stocking shelves, hearing the complaint of a customer, working with employees on their schedules, or running a cash register, she was fulfilling her task of running the store. *There was no one else at the site to direct these actions*. While Grace does argue that she was under the direct supervision of the district manager, she nonetheless stated that he came to the store only once every two to three weeks.

Again with respect to the frequency with which Grace exercised discretion, it is apparent that she exercised discretion virtually every day and all day long. Every one of the day-to-day tasks involved judgment and discretion. How to handle a customer complaint or an employee complaint, how to adjust a schedule, how to arrange the stock in a manner that was pleasing, what task to address first, how to keep a mindful eye on shrinkage and breakage while at the same time satisfying customers—all involved discretionary acts inherent in being responsible for the successful operation of a retail store.

With respect to whether she was relatively free from supervision, she testified that she was subject to company policies and the company template for a store in the Family Dollar chain. She also stated that the district manager provided her with a quarterly budget and expected her to meet the budget, and that he visited her once every two to three weeks. On the other hand, apart from this supervision, which was not uncharacteristic for any retail operation, the district manager was not, as the district court observed, "a micro-manager who constantly was looking over her shoulder." Indeed the district manager had 17 stores to supervise, which would hardly permit him to micro-manage all 17.

Finally, considering the fifth factor, we look to the relationship between the store manager's salary and nonexempt employees' wages. Here, we consider two items, first, whether the manager earned more, in absolute terms, than nonmanagerial employees, and second, whether the manager was a "profit center," namely, whether the manager had the ability to influence the amount of her compensation. As to the first item, Grace earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that while hourly employees at Family Dollar earned an average wage of $5.81 per hour, during the same period Grace earned compensation which, when computed on an hourly basis, averaged between $9.62 and $12.02 per hour. In addition, Grace received annual bonuses of $1,000 or more, whereas

none of the nonexempt Family Dollar employees received bonuses. As to the second item, Grace's store was also a "profit center," and her performance evaluation, salary, and bonus depended on her store's profitability. She maintained a profitable store, as she testified, because she took care of her store so that she had "loyal, repeat customers." She explained at some length that for the store to be profitable, she had to be a team leader; her employees had to be proud of the store; the store had to look good; and generally, the team had to do a good job.

Thus, upon consideration of the five factors identified for determining whether Grace's primary duty was management, we conclude that the factors were readily satisfied. Indeed, she was the store's only manager, and in the absence of her management, her store could not have functioned.

Grace also argues that summary judgment in this case was inappropriate because of the decision in *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008). In that case, a group of Family Dollar managers brought suit under the Fair Labor Standards Act for Family Dollar's refusal to pay overtime wages to store managers, and, as here, Family Dollar asserted that the store managers were executive employees not subject to the requirement to pay overtime. The Eleventh Circuit, reviewing the district court's decision to certify a collective action, looked for the commonalities of the store managers' situations and concluded that the certification of a class by the district court fell within the district court's discretion. The court also concluded that the evidence in that case was sufficient to support the jury's verdict awarding overtime wages to store managers.

While Grace argues that the facts in *Morgan* and in the current case are the same, there is no basis to support that claim. We do not have the *Morgan* record in front of us, and we cannot assume that the facts in the two cases are identical. Indeed, there is extensive testimony by Grace as to how she

could make a profit and distinguish herself from other store managers. Moreover, Family Dollar has indicated that even though all of the stores were part of a chain, they also varied significantly both in size and, to some extent, the nature of their inventory, which depended on store location. Moreover, while Family Dollar may have had the same policies throughout its system, the individual responsibilities of managers could well have differed. As the *Morgan* court explained:

> Just because a business classifies all employees in a particular job category as exempt does not mean that those employees are necessarily "similarly situated" for purposes of a 29 U.S.C. § 216(b) collective action. Rather, it is necessary to review the actual job duties of those in that job category to determine whether they are similarly situated and whether the exemption defense can be collectively litigated.

*Id.* at 1264 n.46.

It is also important to note that in *Morgan* the district court found that the plaintiffs did not perform exempt and nonexempt duties concurrently and that they were managed by highly involved district managers. *Id.* at 1272. Both of those findings would not be supported by the record in this case.

At bottom, we affirm the district court's order granting summary judgment, concluding that Grace was an executive and therefore not entitled to overtime pay.

IV

Grace and the class members on whose behalf she filed her complaint under 29 U.S.C. § 216(b) also contend on appeal that the district court abused its discretion in not preliminarily certifying a collective action to facilitate notice to the other potential class members.

Because we have affirmed summary judgment dismissing Grace's complaint on the merits, we need not address whether the district court properly refused to certify her action as a collective action. Without a viable claim, Grace cannot represent others whom she alleged were similarly situated.

For the reasons given, the judgment of the district court is

*AFFIRMED*.