THIS OPINION IS A PRECEDENT OF THE TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451
General Contact Number: 571-272-8500

BUO

Mailed: December 14, 2015

Opposition No. 91203686

*Hollywood Casino LLC*

*v.*

*Chateau Celeste, Inc.*

**Before Seeherman, Lykos, and Wellington, Administrative Trademark Judges.**

**By the Board:**

*Background*

Chateau Celeste, Inc. ("Applicant") seeks to register the mark HOLLYWOOD HOTEL, in standard character format, for "[b]ar and cocktail lounge services; hotel, restaurant and catering services; providing social meeting, banquet and social function facilities; [and] provision of conference, exhibition and meeting facilities," in International Class 43.[1]

On February 6, 2012, Hollywood Casino Corp., the original opposer in this proceeding, filed a notice of opposition on the ground of likelihood of confusion,

---

[1] Application Serial No. 85281324 ("the '324 application"), filed March 30, 2011, based on Applicant's allegation of use of the mark in commerce under Trademark Act Section 1(a), 15 U.S.C. § 1051(a). Applicant alleges March 2, 2001, as the date of first use anywhere and in commerce.

pleading ownership of two registrations, both for the mark HOLLYWOOD CASINO, in standard characters, for "casino services," in International Class 41;[2] and "hotel services," in International Class 42.[3] 1 TTABVUE 3-4, ¶ 2.[4] Opposer attached copies of printouts from the USPTO's electronic database, which show the current status and title of Opposer's pleaded registrations as of the filing date of the notice of opposition. *See* Trademark Rule 2.122(d).[5]

Applicant, in its answer filed September 13, 2012, denied the salient allegations of the notice of opposition.

Now before the Board is Opposer's renewed combined motion filed January 8, 2015: (i) to amend its notice of opposition to add a claim that "Applicant is not the owner of the applied-for HOLLYWOOD HOTEL mark," based upon certain responses given during Applicant's Fed. R. Civ. P. 30(b)(6) deposition, 49 TTABVUE

---

[2] Registration No. 1851759, issued August 30, 1994, from an application filed May 5, 1993.

[3] Registration No. 1903858, issued July 4, 1995, from an application filed May 5, 1993.

[4] Citations to the record are to TTABVUE, the docket history system for the Trademark Trial and Appeal Board. Because the Board primarily uses TTABVUE in reviewing evidence, the Board prefers that citations to material or testimony in the record that has not been designated confidential include the TTABVUE docket entry number and the TTABVUE page number. For material or testimony that has been designated confidential and which cannot be viewed on TTABVUE, the TTABVUE docket entry number where such material or testimony is located should be included in any citation. *See Turdin v. Trilobite, Ltd.*, 109 USPQ2d 1473, 1476 n.6 (TTAB 2014).

[5] The printouts are from the USPTO's prior electronic file system, referred to as Trademark Application and Registration Retrieval (TARR). This system has since been replaced with the Trademark Status and Document Retrieval (TSDR) system; however, the TARR printouts attached to the notice of opposition filed prior to this change retain their probative value.

31, ¶ 18; and (ii) for summary judgment based upon the proposed claim that Applicant does not own the mark.[6]

With respect to its motion to amend the notice of opposition, Opposer asserts that: (i) its "request is timely because the facts underlying Opposer's amendment did not come to light until the deposition of Applicant's President and CEO," *id.* at 22; (ii) "Opposer's amendment is well-pled," *id.* at 23; and (iii) "Applicant will not be prejudiced by the amendment because the facts concerning ownership of the applied-for mark are exclusively within Applicant's control and Applicant needs no discovery from Opposer on this topic." *Id.*

By way of its motion for summary judgment, Opposer alleges that "Applicant, by its own admission, does not control the nature and quality of the services rendered at the HOLLYWOOD HOTEL property. Applicant is a mere licensee of the applied-for mark HOLLYWOOD HOTEL," and therefore, "its Application is void *ab initio*, and judgment should be entered" in Opposer's favor. *Id.* at 8.

Both motions are fully briefed.

### *Motion to Amend Notice of Opposition – Fed. R. Civ. P. 15(a)*

In contesting Opposer's motion for leave to file an amended notice of opposition, Applicant states only that "Opposer should … not be granted leave to amend its

---

[6] On September 18, 2014, Opposer filed a combined motion to amend the notice of opposition and for summary judgment. Citing Trademark Rule 2.120(e)(2), the Board denied consideration of Opposer's motion, explaining that the proceeding was deemed suspended as of the earlier filing of Applicant's motion to compel, and that any papers filed subsequent to that date that were not germane to the motion to compel would not be considered. *See Jain v. Ramparts Inc.*, 49 USPQ2d 1429, 1430 (TTAB 1998) (proceedings deemed suspended as of the filing of the motion). The Board subsequently granted Applicant's motion to compel in part, and denied it in part.

notice of opposition to add improper ownership of the application as a basis for opposing the subject application." 51 TTABVUE 9.

The Board liberally grants leave to amend pleadings at any stage of a proceeding when justice so requires, unless entry of the proposed amendment would be prejudicial to the rights of the adverse party or would violate settled law. *See* Fed. R. Civ. P. 15(a); *see also* Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 507.02 (2015) and cases cited therein. Inasmuch as the information that forms the basis of Opposer's proposed claim was learned through Applicant's deposition responses just days before the filing of Opposer's motion for leave to amend its pleading, the claim was timely raised. Although this proceeding has passed the discovery stage, the Board does not find, and Applicant has not pointed to any specific prejudice that would result from amendment of Opposer's pleading. *See Metromedia Steakhouses Inc. v. Pondco II Inc.,* 28 USPQ2d 1205, 1206-07 (TTAB 1993); *Focus 21 Int'l Inc. v. Pola Kasei Kogyo Kabushiki Kaisha*, 22 USPQ2d 1316, 1318 (TTAB 1992) (motion to amend filed prior to opening of petitioner's testimony period permitted). As Opposer points out, much if not all of the information needed for Applicant to defend the proposed additional claim is already in Applicant's custody or control. Therefore, no reopening of the discovery period is necessary. Additionally, the allegation of facts supporting the proposed added claim provides sufficient detail as to the basis thereof. *Conolty v. Conolty O'Connor NYC LLC*, 111 USPQ2d 1302, 1309 (TTAB 2014); *Great Seats, Ltd. v. Great Seats, Inc.*, 84 USPQ2d 1235, 1244 (TTAB 2007).

Accordingly, the motion for leave to file an amended notice of opposition adding a claim of nonownership is **GRANTED**, and Opposer's amended pleading filed January 8, 2015, is now Opposer's operative pleading. We now turn to Opposer's motion for summary judgment. For purposes of deciding the motion, we will deem Applicant to have denied the allegations regarding the newly added ground.

### *Summary Judgment – Fed. R. Civ. P. 56(a)*

Entry of summary judgment is appropriate only where there are no genuine disputes as to any material facts, thus allowing the case to be resolved as a matter of law. Fed. R. Civ. P. 56(a). A factual dispute is genuine if, on the evidence of record, a reasonable fact finder could resolve the matter in favor of the non-moving party. *See Opryland USA Inc. v. Great Am. Music Show Inc.*, 970 F.2d 847, 23 USPQ2d 1471, 1472 (Fed. Cir. 1992); *Olde Tyme Foods, Inc. v. Roundy's, Inc.*, 961 F.2d 200, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992). Evidence on summary judgment must be viewed in a light favorable to the non-movant, and all justifiable inferences are to be drawn in the non-movant's favor. *Lloyd's Food Prods., Inc. v. Eli's, Inc.*, 987 F.2d 766, 25 USPQ2d 2027, 2029 (Fed. Cir. 1993); *Opryland USA*, 23 USPQ2d at 1472. The Board may not resolve genuine disputes as to material facts; it may only ascertain whether genuine disputes as to material facts exist. *See Lloyd's Food Prods.*, 25 USPQ2d at 2029; *Olde Tyme Foods*, 22 USPQ2d at 1542.

Under Fed. R. Civ. P. 56(a), the movant has the initial burden of demonstrating that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Sweats Fashions Inc. v. Pannill Knitting Co. Inc.*, 833 F.2d 1560, 4

USPQ2d 1793 (Fed. Cir. 1987). If the evidence produced in support of the summary judgment motion does not meet the moving party's burden, "summary judgment must be denied even if no opposing evidentiary matter is presented." *Id.* (quoting Fed. R. Civ. P. 56 advisory committee notes to the 1963 amendments).

Trademark Act Section 1 requires that an Applicant "be the owner of the mark sought to be registered." 15 U.S.C. § 1051(a)(3)(A). *See also In re Wella A.G.*, 787 F.2d 1549, 229 USPQ 274, 277 (Fed. Cir. 1986) (C.J. Nies concurring) ("Under section 1 of the Lanham Act, only the *owner* of a mark is entitled to apply for registration.") "It is fundamental that ownership of a mark is acquired by use, not by registration." *Holiday Inn v. Holiday Inns, Inc.*, 534 F.2d 312, 189 USPQ 630, 635 n.6 (CCPA 1976). *See also Huang v. Tzu Wei Chen Food*, 849 F.2d 1458, 7 USPQ2d 1335, 1336 (Fed. Cir. 1988). Therefore, "an application filed by one who is not the owner of the mark sought to be registered is a void application." *In re Tong Yang Cement Corp.*, 19 USPQ2d 1689, 1690 (TTAB 1991) (citing *In re Techsonic Industries, Inc.*, 216 USPQ 619 (TTAB 1982)). *See also*, 15 U.S.C. § 1051(a); *Huang*, 7 USPQ2d 1335; *Holiday Inn*, 189 USPQ at 635 n.6 ("One must be the owner of a mark before it can be registered."); *Great Seats,* 84 USPQ2d at 1239 ("In a use-based application under Trademark Act Section 1(a), only the owner of the mark may file the application for registration of the mark; if the entity filing the application is not the owner of the mark as of the filing date, the application is void *ab initio.*"); Trademark Rule 2.71(d).

Opposer asserts in its brief that "Applicant's President and CEO testified unequivocally at his deposition that someone other than Applicant – Zarco Hotels, Inc. – controls the nature and quality of the services rendered at the HOLLYWOOD HOTEL property." 49 TTABVUE 14. Citing, *inter alia*, *Smith Int'l Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (TTAB 1981), Opposer asserts that "[t]he owner of a mark is the entity that controls the nature and quality of the goods or services offered under the mark and is the only party who may apply to register the mark," and therefore, Applicant is not the true owner of the applied-for mark. 49 TTABVUE 6. Opposer argues that Applicant is merely a licensee of non-party Zarco Hotels, Inc., "the only party that could seek to register the alleged mark HOLLYWOOD HOTEL." *Id*. at 15.

In support of its motion for summary judgment, Opposer introduced:

- the subject application including the specimens of use comprised of a photo of a hotel bearing the name "Hollywood Hotel The Hotel of Hollywood," a printout from the website http://www.hollywoodhotel.net/, describing the hotel property, and an advertising flyer for the Hollywood Hotel;[7]

- excerpts from the deposition transcript of Applicant's Fed. R. Civ. P. 30(b)(6) witness, Jeff Zarrinnam, Applicant's president and CEO, taken September 9, 2014; and

- Applicant's errata sheet, submitted pursuant to Fed. R. Civ. P. 30(e), making various substantive changes, clarifications and typographical and gramatical corrections to the transcript of Mr. Zarrinnam's deposition.

49 TTABVUE 40-79, Exhs. C-E.

---

[7] Because the application file is automatically of record by operation of Trademark Rule 2.122(b), there was no need to submit it.

Opposer's argument principally relies upon Mr. Zarrinnam's testimony, including the following:

Q    Were you the president and CEO of Chateau Celeste since 1998?

A    Yes.

Q    And does Chateau Celeste own – own the property?

A    Which property?

Q    The property at 1160 North Vermont Avenue, Hollywood, California.

A    No.

Q    Who does own that property?

A    Zarco Hotels, Inc.

. . .

Q    Okay. Which of those four holding companies controls the nature and quality of the services that are provided at the property?

A    Zarco Hotels, Inc.
     And Chateau Celeste, Inc., is the management company.

Q    Chateau Celeste, Inc., is the management company?

A    Correct.

Q    Does Chateau Celeste, Inc., have a license from Zarco Hotels, Inc., to use trademarks?

A    Yes.

49 TTABVUE 65-66, and 67-68.

In another excerpt from the deposition, Mr. Zarrinnam testifies:

Q        … I believe you testified earlier that Zarco Hotels, Inc., owns the property now; is that correct?

A        Yes.

Q        Okay. And when did Zarco Hotels, Inc., become the owner of the property?

A        1994.

. . .

Q        So just -- I just want to make sure that the record is clear on this. Zarco Hotels, Inc., became the owner of the property in 1994, and they continue to be the owner today; is that correct?

A        Correct.

Q        And there have been no other owners, you know, within that time?

A        No.

Q        Okay. Was the property ever called Chateau Celeste?

A        No.

. . .

Q        And I believe you stated earlier that Chateau Celeste, Inc., who is the applicant in this proceeding, is the management company for Zarco Hotels, Inc., is that correct?

A        Correct.

52 TTABVUE 19 and 20-21.

However, on October 17, 2014, Applicant served an errata sheet changing certain portions of that deposition transcript. Specifically, Applicant sought to "clarify" that "Zarco Hotels, Inc. is the owner and operator of the property, and

Chateau Celeste, Inc. is the management company that manages and controls the nature and quality of the services at the property." *Id.* at 78. Additionally, Mr. Zarrinnam changed his testimony with regard to the licensing of the mark, now stating that "Zarco Hotels, Inc. has a license from Chateau Celeste, Inc. to use trademarks." Mr. Zarrinnam's proffered reasons for the changes were to provide "clarification to provide [a] more complete answer and avoid confusion of the entities' roles in view of terminology used in the question," and "clarfication of [the] answer due to misunderstanding the question and the way names of entities were listed in relation to their roles about licensing to use trademarks." *Id.*

Opposer argues that "Applicant's errata sheet cannot raise a genuine issue of material fact to defeat summary judgment, regardless of whether it remains part of the record, because the errata sheet contradicts the clear-cut, pivotal admissions given at the [discovery] deposition of Applicant's [Rule] 30(b)(6) corporate designee with no plausible explanation." *Id.* at 16. Opposer asserts that "[i]t was only after receiving Opposer's motion for summary judgment in September 2014 that Applicant decided that Mr. Zarrinnam's testimony required 'clarification.' Mr. Zarrinam's errata sheet is a sham affidavit tactically designed to avoid summary judgment." *Id.* at 20 (citing *EBC, Inc. v. Clark Building Sys., Inc.*, 618 F.3d 253, 269-70 (3d Cir. 2010) (noting that courts refuse to consider alterations to deposition testimony that are submitted after a summary judgment motion is filed)).

Applicant contends that "Mr. Zarrinnam was well within his right to review his deposition transcript within the 30 days allowed by the Federal Rules of Civil

Procedure 30(e) and stipulated to by counsel for the parties, and then offer any changes or corrections to his testimony on an errata sheet," and that "[t]he fact that Opposer chose to file its first motion for summary judgment during that 30-day window of time does not suddenly attribute bad or evil motives to the changes offered on the errata sheets." 51 TTABVUE 6.

In determining the issues now before the Board, three questions must be answered: (1) whether the Board may consider the errata sheet as part of the record in deciding this motion for summary judgment; (2) whether the Board may consider Applicant's declaration submitted in connection with its response to opposer's motion for summary judgment; and (3) whether a genuine dispute of material fact exists as to Opposer's newly asserted nonownership claim in light of whatever evidence may properly be considered.

A. <u>Fed. R. Civ. P. 30(e) – Errata Sheet</u>

Federal Rule of Civil Procedure 30(e) involves discovery depositions by oral examination and provides:

> (1) *Review; Statement of Changes.* On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> (A) to review the transcript or recording; and
>
> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

The Board has not had occasion to previously address this particular issue with respect to a discovery deposition. However, with respect to testimonial depositions

- 11 -

"the Board has made it clear that, while typographical and editorial corrections may be made in a transcript, any changes in a testimony deposition which are substantive in nature and, in effect, change the testimony after the fact, will not be considered." *Marshall Field & Co. v. Mrs. Fields Cookies*, 25 USPQ2d 1321, 1325 (TTAB 1992) (citing *Cadence Indus. Corp. v. Kerr*, 225 USPQ 331 (TTAB 1985) and *Entex Indus., Inc. v. Milton Bradley Co.*, 213 USPQ 1116 (TTAB 1982)). The Board has also noted that in the context of discovery depositions "[a]lthough some courts do not allow witnesses to change their transcripts under Fed. R. Civ. P. 30(e) to directly contradict their examination testimony on material matters, others do, preferably with the original answers remaining in the record." *Bayer Consumer Care AG v. Belmora LLC*, 110 USPQ2d 1623, 1632 n.69 (TTAB 2014) (citing 8A Charles Alan Wright *et al.*, Fed. Prac. & Proc. Civ. § 2118 (3d ed. April 2013)) *aff'd in part and rev'd in part on other grounds*, *Belmora LLC v. Bayer Consumer Care AG*, 84 F. Supp.3d 490, 115 USPQ2d 1032 (E.D. Va. 2015), *appeal docketed*, No. 15-1335 (4th Cir.). Therefore, we look to the federal courts for further elucidation on the interpretation of Rule 30(e).

Our primary reviewing court, the Court of Appeals for the Federal Circuit, in the context of a patent suit, addressed whether Rule 30(e) allows for "substantive changes to deposition testimony through an errata sheet," in *Delaware Valley Floral Group Inc. v. Shaw Rose Nets LLC*, 94 USPQ2d 1064 (Fed. Cir. 2010). The Federal Circuit applied the relevant law of the pertinent regional circuit – the Eleventh Circuit – and found that the district court had not abused its discretion in excluding

defendants-appellants' errata sheet submitted to substantively correct testimony given during the deposition of defendant Kenneth P. Shaw. *Id.* at 1069. The court reasoned that "even if Rule 30(e) does not prohibit such substantive changes, it certainly does not require them." *Id.* The court noted the untimeliness of the submission of the errata sheet, *Id.* at 1068; and the questionable submission of the errata sheet only after "Plaintiffs served [Mr. Shaw] with their motion for sanctions, notifying him that his testimony was fatal to his claim." *Id.*[8] Finally, the court noted that "[a]t least one circuit … has determined that a party cannot create an issue of fact by amending his deposition under Rule 30(e)," *Id.* at 1069 n.2, (citing *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225-26 (9th Cir. 2005) ("While the language of FRCP 30(e) permits corrections 'in form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment.")).

Other circuits apply different interpretations of Rule 30(e). For example, the Tenth Circuit has explained that it does not "condone counsel's allowing material changes to deposition testimony and certainly do[es] not approve of the use of such altered testimony that is controverted by the original testimony." *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002). Similarly, the Third Circuit has stated that "a party may not generate from whole cloth a genuine issue of

---

[8] The district court also considered Mr. Shaw's previous deposition experience, concluding that he was a "seasoned deponent," and his responses to opposing counsel's direct and repeated inquiries wherein Mr. Shaw provided consistent answers. *See Delaware Valley Floral Group Inc.*, 94 USPQ2d at 1068.

material fact (or eliminate the same) simply by retailoring sworn deposition testimony to his or her satisfaction." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 267-68 (3d Cir. 2010). In contrast, the Court of Appeals for the First Circuit has held that the "rule does not limit a party to correction of stenographic errors, but also permits changes in form or substance," *Pina v. Children's Place*, 740 F.3d 785 (1st Cir. 2014); and the Second Circuit has stated that "the judge does not examine the sufficiency, reasonableness, or legitimacy of the reasons given for changes to the deposition, even if those reasons are unconvincing, and the rule places no limitations on the type of changes that can be made." *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98 (2d Cir. 1997). Both the First and Second Circuits attempt to mitigate any unfairness caused by such changed evidence, the former by allowing the deposition to be reopened to allow examination on the altered testimony, and the latter by allowing the original answers to remain as part of the record for weighing at trial.

However, as the Third Circuit noted in *EBC, Inc.*, "reopening the deposition might not be a sufficient remedy, for the deponent who has reviewed his original testimony and settled on an opposite answer may also prove unimpeachable." *EBC, Inc.*, 618 F.3d at 268. Additionally, in the context of a motion for summary judgment, a court does not have the luxury of weighing evidence such as a party's original answers against its altered responses for credibility, as issues of fact such as this may not be resolved on summary judgment. *See Lloyd's Food Prods.*, 25 USPQ2d at 2029; *Olde Tyme Foods*, 22 USPQ2d at 1542. Therefore, a party could

raise such an issue simply to evade a potential judgment against it upon motion for summary judgment.

Determination of the instant motion requires interpretation of Rule 30(e) in the summary judgment context. We conclude that use of a flexible approach — consistent with our prior analogous jurisprudence — is appropriate. Although parties must be allowed to correct errors within deposition testimony, a party should not be allowed to make an unexplained "about-face" with respect to damaging deposition testimony. To follow such an interpretation of Rule 30(e) would eviscerate the purpose of sworn depositions, and would severely prejudice the deposing party's ability to rely upon or strategize based on the responses given by a deponent. As the District Court for the Western District of Louisiana explained in *Greenway v. International Paper Co.*:

> The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, *i.e.*, he reported "yes" but I said "no," or a formal error, *i.e.*, he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

144 F.R.D. 322, 325 (W.D. La. 1992), *quoted with approval in E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 277 F.R.D. 286, 297 (E.D. Va. 2011) *and Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 435, 465 (E.D. Va. 2011).

Therefore, we examine the circumstances surrounding the submission of the errata sheet to determine whether it should be excluded from the record by addressing certain factors viewed by the various circuit courts. These factors include:

> (1) the timeliness of the submission of the errata (the language of Rule 30(e) allows for amendments within 30 days after the deposed party is notified by the officer that the transcript or recording is available);

> (2) the reasons or explanation given for the need to amend the deposition testimony, and whether such explanation is itself a question of fact not suitable for disposition on a motion for summary judgment, *e.g.* medical conditions, *see McCormick v. City of Ft. Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003) (deponent's capacity was diminished by the effects of anaesthesia and other pain medications taken for a recent surgery); *cf. Sanford v. CBS, Inc. et al.*, 594 F.Supp. 713, 715, 225 USPQ 136, 137 (N.D. Ill. 1984) ("it is not enough for the witness to give general conclusory reasons for all the changes … or … for the witness to record no reasons at all.");

> (3) the circumstances which precipitated the submission of the errata sheet, *e.g.* submission in response to a motion pointing out that the deponent's deposition testimony may be fatal to the party's claim; *see Delaware Valley Floral Group*, 94 USPQ2d at 1068;

> (4) the manner and number of changes made to the testimony; *see Deuer Mfg. Inc. v. Kent Prods Inc.*, 1989 WL 297879, 17 USPQ2d 1379, 1381 (E.D. Mich. 1988), *rev'd* on other grounds, 907 F.2d 158 (1990);

> (5) whether consideration of the errata sheet would serve to undermine the reliability of the deposition process; *Id.*; and

> (6) the extent to which prejudice to the deposing party may be mitigated by a reopening of the deposition to allow for the impeachment of the prior testimony.

Where the proposed changes are substantive in nature and relate to an issue that is potentially dispositive of a claim or defense, heightened scrutiny should be applied.

*1) Timeliness*

Applicant's errata sheet was timely served on Opposer within thirty days of the transcript being made available to Applicant for inspection.

*2) Explanation of the Need for Amendment*

The reasons provided for the changes, "[c]larification to provide more complete answer and avoid confusion of the entities' roles in view of terminology used in the question," and "[c]larification of answer due to misunderstanding the question and the way names of entities were listed in relation to their roles about licensing to use trademarks," are not convincing. Mr. Zarrinnam himself laid out the cast of entities, and was given multiple opportunities to correctly identify them. Mr. Zarrinnam's proffered reasons do not indicate that the responses were inaccurately transcribed, but simply that he misunderstood the role of the entities that *he identified* in relation to the questions asked. Further, Applicant's counsel had opportunity, but did not attempt to rehabilitate his witness to clarify or correct any misstatements.

*3) Circumstances Precipitating the Need for Amendment*

We are not convinced that Applicant has not attempted to evade the potential entry of judgment against it through its submission of the errata sheet, which seeks to correct responses regarding the very issue that Opposer raised in its initial motion for summary judgment. Although the submission was timely, the service of the errata sheet only after Applicant was alerted to the damaging nature of the

testimony of its witness, given the totality of the circumstances, *e.g.* the timing of the changes, the nature of the changes, and the lack of a reasonable explanation for the changes, suggests an evasive motive.

### 4) *The Manner of Amendment*

Moreover, the manner of the changes, as the Third Circuit described, are not changes to correct erroneously reported testimony of a substantive nature, but serve to recreate Applicant's testimony, presumably to defeat Opposer's newly added nonownership claim. This is particularly well illustrated by an excerpt cited by Opposer in which Mr. Zarrinnam gave the simple answer 'Yes,'" to the inquiry of whether Applicant has a license from Zarco Hotels, Inc., to use trademarks; the correction in the errata sheet changes the formerly simple response to this direct question to saying "yes", but then totally reversing what the "yes" stands for: "Yes, Zarco Hotels, Inc. has a license from [Applicant] to use trademarks." 49 TTABVUE 78.

### 5) *Integrity of the Deposition Process*

Given the nature and timing of the changes, and the context in which this issue is being determined, consideration of the errata sheet would indeed undermine the reliability of sworn depositions, and would also deprive Opposer of its ability to seek judgment on its newly asserted claim.

### 6) *Mitigation of Prejudice*

Finally, and as previously noted, a reopening of the deposition to allow for impeachment of the "corrected" testimony would intrinsically defeat the motion for

summary judgment as the Board could not weigh the credibility of the contradicting evidence in a summary judgment context. Indeed, reopening the time for Opposer to depose Mr. Zarrinnam would likely result in Mr. Zarrinnam consistently hewing to his amended responses per counsel's instruction and not impeaching his prior testimony. Accordingly, giving Opposer another opportunity to depose Mr. Zarrinnam would very likely be useless. *See EBC, Inc.*, 618 F.3d at 268. Therefore, taking the sixth factor into account in determining this motion for summary judgment would inherently weigh against consideration of the errata sheet.

Balancing the factors, consideration of the errata sheet under these circumstances would be inappropriate. Applicant has not provided credible reasons for the wholesale substantive changes sufficient to overcome their questionable timing and nature of the changes. Therefore, we will not consider the errata sheet as part of the record in determining the motion for summary judgment.

B.  Declaration – "Sham Affidavit"

Applicant, in support of its brief in opposition to Opposer's motion for summary judgment, attached a declaration from Mr. Zarrinnam. In his declaration, Mr. Zarrinnam maintained that the responses in his deposition were inaccurate and advanced explanations similar to the reasons for the changes he asserted in his errata sheet. Additionally, Mr. Zarrinnam claimed that "Opposer's attorney did not explain anything about the meaning of the term 'controls the nature and quality of the services that are provided at the property,'" which caused him to provide inaccurate answers. 51 TTABVUE 13. Mr. Zarrinnam stated that his responses of

"Yes" to both the questions: "Chateau Celeste, Inc. is the management company?" and "Does Chateau Celeste, Inc., have a license from Zarco Hotel, Inc., to use the trademarks?," needed clarification after he reviewed the transcript because "some of [his] responses to those questions were unintentionally confusing and could be misunderstood." *Id.*

Opposer, in response, contends that Mr. Zarrinnam's declaration is a "sham affidavit." Opposer asserts that "[t]hough [Mr. Zarrinnam] claims in his declaration that he was confused by the simple and straightforward questions asking the identity of the entity that controlled the nature and quality of the services rendered at the HOLLYWOOD HOTEL property – information that a President and CEO would certainly know – the question was direct and [Mr. Zarrinnam's] answer did not reflect any confusion." 52 TTABVUE 7.

In determining a similar issue in *Delaware Valley Floral Group*, the Federal Circuit, applying the law of the Eleventh Circuit, determined that the district court had not abused its discretion in not considering a declaration submitted by Mr. Shaw in opposition to the motion for summary judgment. 94 USPQ2d at 1070. The court, quoting the Eleventh Circuit, explained that "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, *without explanation*, previously given clear testimony … [r]ather, that affidavit would be a sham." *Id.* at 1069 (quoting *McCormick*, 333 F.3d at 1240 n.7) (emphasis in original). The court further stated that "[i]t is well settled

that a court may 'disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony.'" *Id*. at 1070. The Fourth Circuit's position is similar. *See, e.g., In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512-13 (4th Cir. 2011) (nonmovant "cannot create a dispute about a fact that is contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct") (citations omitted).

In his deposition testimony Mr. Zarrinnam provided clear answers to Opposer's unambiguous questions. Therefore, under these circumstances we will not consider Mr. Zarrinnam's contradictory declaration. To rule otherwise would contravene our determination with regard to Mr. Zarrinnam's errata sheet, as Applicant would essentially defeat the motion for summary judgment by simply submitting a sham affidavit that reiterates the points in the errata sheet.

C. Conclusion

Nonetheless, drawing all justifiable inferences in favor of Applicant as the non-moving party, viewing the evidence submitted, including Mr. Zarrinnam's deposition testimony without regard to the errata sheet or declaration,[9] we cannot

---

[9] The parties should note that evidence submitted in connection with the motion for summary judgment is of record only for consideration of this motion. To be considered at final hearing, any such evidence must be properly introduced in evidence during the appropriate trial period. *See Levi Strauss & Co. v. R. Josephs Sportswear Inc.,* 28 USPQ2d

find on this record that Opposer has discharged its burden of showing that there are no genuine disputes of material fact, and that it is entitled to judgment as a matter of law. In particular, the deposition testimony does not make clear that Applicant was not, in fact, the owner of *the trademark* HOLLYWOOD HOTEL at the time the application was filed. The testimony Opposer cites as supporting its claim that Applicant was not the owner merely establishes that Applicant was not the owner of the *physical property* known as the Hollywood Hotel, located at 1160 North Vermont Avenue in Hollywood, California at the time the application was filed. Accordingly, we find that a genuine dispute of material fact exists at least as to the question of whether Applicant was the owner of the trademark HOLLYWOOD HOTEL on the date the application was filed.[10]

Therefore, Opposer's motion for summary judgment is **DENIED**. Proceedings are resumed upon the following schedule:

| | |
|---|---|
| Plaintiff's Pretrial Disclosures | **1/1/2016** |
| Plaintiff's 30-day Trial Period Ends | **2/15/2016** |
| Defendant's Pretrial Disclosures | **3/1/2016** |
| Defendant's 30-day Trial Period Ends | **4/15/2016** |
| Plaintiff's Rebuttal Disclosures | **4/30/2016** |
| Plaintiff's 15-day Rebuttal Period Ends | **5/30/2016** |

In each instance, a copy of the transcript of any testimony, together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of that testimony. Trademark Rule 2.125.

---

1464 (TTAB 1993); *Pet Inc. v. Bassetti*, 219 USPQ 911 (TTAB 1983); *Am. Meat Inst. v. Horace W. Longacre, Inc.*, 211 USPQ 712 (TTAB 1981).

[10] The fact that we have identified only one genuine dispute should not be construed as a finding that this is necessarily the only dispute which remains for trial.

Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b). An oral hearing will be set only upon request filed as provided by Trademark Rule 2.129.